In the

# United States Court of Appeals
## For the Seventh Circuit

---

Nos. 04-4070 & 05-3960

EUGENE K. BIESEK,

*Plaintiff-Appellant,*

*v.*

SOO LINE RAILROAD COMPANY and
CANADIAN PACIFIC RAILWAY,

*Defendants-Appellees.*

---

Appeals from the United States District Court
for the Western District of Wisconsin.
No. 04-C-0223-S—**John C. Shabaz**, *Judge.*

---

ARGUED FEBRUARY 16, 2006—DECIDED MARCH 6, 2006

---

Before BAUER, EASTERBROOK, and MANION, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* Eugene Biesek filed a bankruptcy petition in September 2002 and three months later received a discharge from liability on his remaining debts. The schedule of assets did not list any potential litigation, and in response to a form inquiring about "other contingent and unliquidated claims of every nature" Biesek checked "none." That was a lie. Biesek had been injured on the job in December 2000 and through retained counsel had demanded compensation from his employer under the Federal Employers' Liability Act, 45 U.S.C. §§ 51-60. In June 2002, only three months before the

bankruptcy began, the employer (Soo Line Railroad) had offered $62,500 in settlement. Failure to reveal this potential recovery could not have been inadvertent— especially as this offer, if accepted, made Biesek solvent, and he would have been required to satisfy all of his debts. (According to the bankruptcy schedules, Biesek's debts exceeded his listed assets by about $9,000.) Biesek had a lawyer in the bankruptcy as well as in the FELA matter and cannot attribute his answer to the legal jargon about "contingent and unliquidated claims."

In August 2003 Biesek filed this FELA action. He asked the court to "enforce" Soo Line's offer of June 2002. The railroad answered that the offer had been rejected as inadequate and was no longer on the table. Soo Line maintained that Biesek, who sought and retained a benefit (the discharge) based on a representation that he had no contingent and unliquidated claims, is stuck with that position. The district court granted summary judgment in the employer's favor, invoking the doctrine of judicial estoppel. The judge thought that Biesek should not benefit by his fraud on the creditors in the bankruptcy. (The fraud was Biesek's alone. To her credit, Biesek's bankruptcy lawyer Nancy A. Thome, who had not known about the FELA claim until June 2003, promptly notified the Chapter 7 Trustee about the problem in his disclosures.)

Nine months after the district court dismissed the suit, and while an appeal (No. 04-4070) was pending, Biesek and the Trustee signed a "stipulation" providing that Biesek would turn over the first $7,000 of any recovery to the Trustee for the creditors' benefit; in exchange the Trustee represented that he agrees with Biesek's position that the omission of the FELA claim from the bankruptcy schedules had been inadvertent. This stipulation was the basis of a motion under Fed. R. Civ. P. 60(b)(2) to reopen the judgment. Biesek has filed a separate appeal (No. 05-3960) from

the decision, 2005 U.S. Dist. LEXIS 19380 (W.D. Wis. Sept. 7, 2005), denying that motion.

Rule 60(b)(2) authorizes a district judge to modify a judgment in response to "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)". As the district judge remarked, the evidence (if the stipulation can be called "evidence" about Biesek's thinking when he completed the bankruptcy schedules) was newly created rather than newly discovered. Biesek knew his own mental state; if the omission reflected inadvertence rather than intent to deceive, Biesek could have provided supporting evidence either before the district court's grant of summary judgment or via a timely motion under Rule 59. Yet he not only failed to adduce evidence before the district court acted on Soo Line's motion but also did not accept the Trustee's invitation (extended in October 2003) to amend the bankruptcy schedules, make the FELA claim available to the creditors, and use any personal exemption available under state law to shelter part of the recovery. Failure to take that opportunity implies determination that the creditors receive not a penny from any recovery. The "stipulation" is Biesek's last-ditch effort to save something for himself; it does not demonstrate that he has tried all along to honor his debts. The district court's order under Rule 60(b)(2) cannot be labeled an abuse of discretion. We must decide whether, on the record as it stood at the time of the district court's initial decision, Biesek was entitled to pursue a FELA action against the Soo Line.

Plenty of authority supports the district judge's conclusion that a debtor in bankruptcy who receives a discharge (and thus a personal financial benefit) by representing that he has no valuable choses in action cannot turn around after the bankruptcy ends and recover on a supposedly nonexistent claim. See *In re Superior Crewboats, Inc.*, 374 F.3d 330 (5th Cir. 2004); *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d

1282 (11th Cir. 2002); *Hamilton v. State Farm Fire & Casualty Co.*, 270 F.3d 778 (9th Cir. 2001); *In re Coastal Plains Inc.*, 179 F.3d 197 (5th Cir. 1999); Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, 18B *Federal Practice & Procedure* §4477 at 621 (3d ed. 2002). See also *New Hampshire v. Maine*, 532 U.S. 742, 749-51 (2001) (discussing the rationale and scope of judicial estoppel); *Astor Chauffeured Limousine Co. v. Runnfeldt Investment Corp.*, 910 F.2d 1540, 1547-48 (7th Cir. 1990) (same). Our circuit has yet to decide whether judicial estoppel blocks a debtor from denying that an asset exists, obtaining a discharge, and then attempting to realize on the concealed asset.

Judges understandably favor rules that encourage full disclosure in bankruptcy. Yet pursuing that end by applying judicial estoppel to debtors' self-contradiction would have adverse effects on third parties: the creditors. Biesek's nondisclosure in bankruptcy harmed his creditors by hiding assets from them. Using this same nondisclosure to wipe out his FELA claim would complete the job by denying creditors even the right to seek some share of the recovery. Yet the creditors have not contradicted themselves in court. They were not aware of what Biesek has been doing behind their backs. Creditors gypped by Biesek's maneuver are hurt a second time by the district judge's decision. Judicial estoppel is an equitable doctrine, and using it to land another blow on the victims of bankruptcy fraud is not an equitable application. Instead of vaporizing assets that could be used for the creditors' benefit, district judges should discourage bankruptcy fraud by revoking the debtors' discharges and referring them to the United States Attorney for potential criminal prosecution.

Decisions that have relied on judicial estoppel assume that the tort claim belongs to the debtor. Only then is one person on both sides of the same issue. Yet why would Biesek own this chose in action? Pre-bankruptcy claims are

part of debtors' estates; this FELA claim therefore belongs to the Trustee, for the benefit of Biesek's creditors. See 11 U.S.C. §541(a)(1); *Pease v. Production Workers Local 707*, 386 F.3d 819, 821-22 (7th Cir. 2004). Looking at the subject this way makes estoppel seem less appropriate—but it also raises the question: Where's the Trustee? This litigation is captioned *Biesek v. Soo Line R.R.*, not *Michael E. Kepler, Trustee in Bankruptcy v. Soo Line*. Attorney Steven P. Garmisa, who filed the notice of appeal and the appellate briefs, represents Biesek rather than Kepler. So the threshold issue is not whether to apply an estoppel but whether Biesek is the real party in interest. He appears to be an interloper, trying to prosecute a claim that belongs to his estate in bankruptcy.

A Trustee in bankruptcy may abandon worthless or low-value assets, including legal claims, see 11 U.S.C. §554, and if the Trustee had abandoned this claim then Biesek could have prosecuted the suit in his own name. *Then* it would have been necessary to consider judicial estoppel. But this claim is not worthless, and the Trustee (who has known about the claim since 2003) has not abandoned it—a step that requires notice to the creditors, which has never been given, and the opportunity for a hearing. 11 U.S.C. §554(a). Instead of abandoning the claim, the Trustee has asserted an interest in the proceeds.

That step raises the question whether the Trustee may have appointed Garmisa to prosecute the claim on behalf of the bankruptcy estate. Yet, as we have already explained, the "stipulation" post-dates the district court's decision, and the judge was entitled to ignore it. Should the "stipulation" be understood as abandoning the FELA action to the extent that its value exceeds $7,000, it would be invalid for lack of notice to the creditors.

A bankruptcy court may allow a Trustee to abandon a chose in action with retroactive effect and so prevent the

dismissal of a suit that the Trustee could not re-file within the period of limitations. See *Morlan v. Universal Guarantee Life Insurance Co.*, 298 F.3d 609, 617 (7th Cir. 2002). But this Trustee has not proposed to do that, the creditors have not been alerted, and the bankruptcy court has not employed its power under §554. No surprise, then, that Biesek has never contended that the Trustee has abandoned this claim. Nor has Biesek argued that the claim is an asset that is covered by a personal exemption under state law and thus passed through the bankruptcy unimpaired, as in *In re Polis*, 217 F.3d 899 (7th Cir. 2000). It is too big to be wholly exempted. So it does not belong to him, and he cannot pursue it in litigation.

Neither Biesek nor the Trustee has asked for a remand so that the Trustee could intervene and take over the suit on behalf of the estate. We therefore need not decide whether that step would have been proper.

AFFIRMED

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*